## Case No. 11,991.

### In re RODGER et al.

[18 N. B. R. 252.] [1]

District Court, S. D. New York. Sept. 3, 1878.

BANKRUPTCY—FIDUCIARY DEBTS — COMPOSITION—DISCHARGE.

Fiduciary debts are discharged by a composition in bankruptcy.

[In the matter of Jane C. Rodger and James Wardrobe, bankrupts.]

Charles Wehle, for the motion.
Gray & Davenport, contra.

CHOATE, District Judge. This is a motion to dissolve an injunction by which a judgment creditor of the bankrupts has been restrained from arresting the bankrupt, Wardrobe, on execution. A creditor's petition was filed July 10, 1878, and there has yet been no adjudication, but proceedings for a composition are now pending. The judgment was for goods sold and delivered, and the proceedings that have been had in the state court amount to an adjudication, conclusive in this court, that the plaintiffs were induced by the false and fraudulent representations of Wardrobe as to their financial condition to sell the goods to the alleged bankrupts. The point to be determined turns upon the question whether this debt as against Wardrobe will be released in case the composition is accepted and confirmed. In re Shafer [Case No. 12,695]. The affidavits certainly do not make out a case for a stay of execution against Wardrobe, if the claim against him will not be discharged, for though they show the opinions of the affiants that Wardrobe's personal attendance on the business is at present necessary in order that the debtors may realize on their stock of goods so as to pay the composition, they show no facts from which the court can properly draw the same conclusion, if it were proper to stay execution on such a ground.

The authorities on the question whether debts created by the fraud or embezzlement of the bankrupt, or contracted by him while acting in a fiduciary character, are discharged by proceedings for a composition, are conflicting. The supreme judicial court of Massachusetts and the general term of the New

---

York supreme court have decided that they are not discharged. Wilmot v. Mudge [103 U. S. 217]; Libbey v. Strasburger [14 Hun, 120]. The supreme court of New Hampshire, the United States district court of New Jersey, and the general term of the New York common pleas hold that they are discharged. Wells v. Lamprey, 16 N. B. R. 205; In re Schafer [Case No. 12,695]; Bamberg v. Stern, 18 N. B. R. 74. The case of Ex parte Halford, L. R. 19 Eq. 436, cited in Wilmot v. Mudge [supra], seems to have no bearing on the question, because it is expressly provided in the English bankrupt law that the debtor shall remain liable on the unpaid balance of such debts. St. 32 & 33 Vict. c. 62, § 15. The bankrupt law of 1867 [14 Stat. 517] provided no measures for a composition between the debtor and his creditors, but provided for proceedings for the discharge of the debtor on his application to the court therefor, and by section 33, it was provided "that no debt created by the fraud or embezzlement of the bankrupt or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged under this act: but the debt may be proved, and the dividend thereon shall be a payment on account of said debt; and no discharge granted under this act shall release, discharge, or affect any person liable for the same debt for or with the bankrupt, either as a partner, joint contractor, indorser, surety or otherwise. And in all proceedings in bankruptcy commenced after one year from the time this act shall go into operation, no discharge shall be granted to a debtor whose assets do not pay fifty per centum of the claims against his estate, unless the assent in writing of a majority in number and value of his creditors, who have proved their claims, is filed in the case at or before the time of application for discharge." Section 43 contains provisions for the estate being wound up by trustees under direction of a committee of the creditors, if the creditors at a meeting should, by a certain majority vote, so resolve and the court should approve. This section, however, expressly provided that in such case the winding up and settlement, should be deemed "proceedings in bankruptcy under this act," and that the debtor might apply for and obtain a discharge as if the resolutions had not been passed, etc. The amendatory act under which composition proceedings are taken was passed June 20, 1874 [18 Stat. 178], and is entitled "An act to amend and supplement an act, etc., and for other purposes." Section 17 provided as follows· "That the following provisions be added to section 43 of said act; that in all cases of bankruptcy now pending or to be hereafter pending, by or against any person, whether an adjudication in bankruptcy shall have been had or not, the creditors of such alleged bankrupt may at a meeting, etc., resolve that a composition proposed by the debtor shall be accepted in satisfaction of the debts due to them from the debtor." It contains specific directions as to the majority required for the adoption of the resolutions and for an inquiry by the court whether it is for the best interest for all concerned. It also provides for the production by the debtor of "a statement of the whole of his assets and debts, and the names and addresses of the creditors to whom such debts respectively are due," and also declares that "the provisions of a composition accepted by such resolution in pursuance of this section shall be binding on all the creditors whose names and addresses and the amounts of the debts due to whom are shown in the statement of the debtor produced at the meeting, etc., but shall not affect or prejudice the rights of any other creditors." The original bankrupt law was embodied in the Revised Statutes passed June 22, 1874, and by section 5117 it was provided "that no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation, etc., shall be discharged by proceedings in bankruptcy; but the debt may be proved and the dividend thereon shall be a payment on account of the debt. No inference, however, can be properly drawn from the substitution of the words "by proceedings in bankruptcy" for the words used in the original act "under this act" that it was adopted with reference to the amendment of the bankrupt law by the act of June 20, 1874 [supra], or was intended to enlarge the scope of this section so as to include cases arising under the act of June 20, 1874, because the Revised Statutes (section 5601) expressly provided that "the enactment of the said revision is not to affect or repeal any act of congress passed since December 1, 1873, and all acts since that date are to have full effect as if passed after the enactment of this revision; and as far as such acts vary from or conflict with any provisions contained in this revision, they are to have effect as subsequent statutes and as repealing any portion of the revision inconsistent therewith." The Revised Statutes are in fact to be regarded as a statute passed on the first day of December, 1873, and upon this question are only entitled to such weight as they may properly have as a statute in pari materia, and as such throwing light on the general legislative purpose and policy touching the subject-matter. The change made in embodying the original bankrupt law into the Revised Statutes was necessary, or some change of phraseology was necessary, because the words "under this act" were no longer appropriate, and although the words to be substituted might have been "under this title," yet there is nothing to indicate that the words adopted as a substitute were intended to make any change in the meaning of the statute. The Revised Statutes were intended to be in a strict sense a revision of existing statutes and the presumption is against a change in meaning from a mere verbal change, where the old phraseology could not be retained and the words substi-

tuted may have been used with like intent and meaning. See section 5595. This explanation seems necessary, because in the case of Wilmot v. Mudge [103 U. S. 217] the opinion of the court seems to proceed in part at least on the words thus introduced by the Revised Statutes into section 33 of the original law, as if the language of the Revised Statutes was to have the force on a question of construction of a contemporaneous or subsequent act. In fact, for all purposes of construction, the act of June 20, 1874, is subsequent to the Revised Statutes, and as the latest expression of the legislative will, controlling if unambiguous. It may, I think, be assumed, then, that the change of phraseology in the Revised Statutes is unimportant, and that the question, as a question of construction, must be determined by the language of the original act [14 Stat. 517], and the amendatory act of 1874 [supra].

Looking at the provisions of those two acts, it seems to me that fiduciary debts are released by composition proceedings under the 17th section of the act of 1874. It is obvious enough that creditors of this description are within the class of creditors referred to in that section under the terms "each known creditor," "all the creditors of the debtor." Indeed, it has not been contended that they are not included within the section for the purpose of their being included in the statement to be produced by the debtor, and of obtaining a payment equally with other creditors of the estate, but it is insisted that they take such payment as a dividend only, leaving their debts undischarged as to the balance. It is to be observed that this class of creditors are clearly within section 43 of the original act to which the provisions of section 17 of the act of 1874 are by the terms of that section "added." But if they are within the meaning of this composition section at all, how can it be said that the resolution is in any sense whatever "binding" on them, unless the composition satisfies and releases their claims? If they were included for the purpose of receiving a pro rata share with other creditors, but, as is claimed, not for the purpose of having their debts satisfied or released, the composition might in some sense be said to be binding on the debtor, but it could not be said to be "binding" on them. There is nothing in the act to show a purpose to exclude this class of creditors from the composition. Indeed, the contrary is so clear that in the discussion of this question that theory has not been proposed.

The provision as to creditors not named in the statement is evidently intended to guard against careless omissions on the part of the debtor, and it may well be doubted whether a composition was good where the omissions were so many as to show that the statute was not being used in good faith by the debtor to effect a compromise with all his creditors, according to its evident scope and spirit; whether by an artful selection of creditors to be notified and creditors to be omitted he could get rid in this way of a part only of his debts.

It is said, however, that the act of June 20, 1874, being an amendment of the act of 1867, the words "no debt shall be discharged" under this act in the 33d section of the act of 1867 become operative by their own force upon every part of the act as amended, and that so they have in reality the same legal effect as the more general words in the Revised Statutes, "no debts shall be discharged by proceedings in bankruptcy" if the Revised Statutes were controlling on the question, and it is further urged that it was the evident policy of the act of 1867, shown by many of its other provisions, as well as the one now in · question, that it was designed for the relief of honest debtors, and that the release of debts fraudulently contracted was contrary to the evident policy and purpose of its framers. As to the first of these suggestions it is to be observed that the words "discharged under this act," and the words of the Revised Statutes, "discharged by proceedings in bankruptcy," had primarily reference, when used in those statutes respectively, to peculiar proceedings for a discharge provided for in those statutes respectively, and were not, when so used, used with reference to an entirely different kind of proceeding not then in existence, and whether or not on an amendment of the statute these words shall have the force and effect to cover and embrace a new and different kind of discharge, introduced into the act by the amending statute, depends upon whether the language of the amending act can be fairly reconciled with such a purpose. If full and fair effect can be given to all the provisions of the subsequent act, consistently with such purpose, then the principle which requires the whole act as amended to be read as far as possible as a single enactment would extend the words of the original act to the new but similar case provided for in the amending act, though that new case was not within the purview of the framers of the original act. But where, as in this case, the terms of the subsequent act are unambiguous, and are clearly inconsistent with such purpose, and can have no meaning if the words of the original act are deemed so extended as to cover this new case, then such construction is impossible, and violates that rule of construction which requires due force and effect to be given to all parts of a statute, and also that obvious rule of construction which makes the latest declaration of the legislative will controlling over an earlier declaration of the same will. Now, in this case, it seems to me that the terms of the act of 1874 are clear and unambiguous, and would be in fact and effect annulled and made meaningless by giving the extension and force to the words of the earlier statute here contended for. These

words cannot be taken, therefore, by construction to be so enlarged, but must be held to refer to what they referred to in the original act, the discharge thereby provided for.

The other suggestion of the general policy of the bankrupt law would be entitled to great weight in a doubtful question of construction. In the interpretation of contemporaneous statutes, this suggestion is entitled to its greatest weight, but where the statutes in pari materia are passed at a considerable interval of time, there is always a possibility of a change in the policy which actuates and governs legislation on a given subject; and if the later statute is unambiguous on the point in question and, fairly interpreted, indicates a different policy from that which appeared in the original act, this is itself the best evidence that the policy of the law-making power has undergone a modification in reference to the subject-matter, and there is no room for the application of the test herein sought to be applied. The subsequent statute, if clear, indicates the policy of the law-makers at the time of its enactment. To apply this principle to the present case, and admitting fully all that is claimed as to the policy apparent in the bankrupt law of 1867, it is very evident that that policy had in important respects become modified, and that, too, in the interest of debtors, at the time of the passage of the act of June 20, 1874. Under the original act, a bankrupt's property was sequestered for the benefit of his creditors, to be administered by an assignee or trustees to be chosen by them or appointed by the court. The debtor had no voice or part in that administration. Under the act of 1874, this strictness of dealing with the debtor was so far mitigated that by a certain majority vote of the creditors, and with the approval of the court, the debtor might be permitted by these composition proceedings to retain on certain conditions, to be agreed on between him and the majority of his creditors, the substantial control of his property and business, and thus work out a stipulated percentage of his debts, to be paid in satisfaction of the whole. It is unnecessary to refer to other particulars which show the same change of purpose as to the treatment of the debtor who was bankrupt. This is enough to show that the rigorous policy towards debtors, evident in the act of 1867, is entitled to little weight in the construction of the act of 1874, and cannot for a moment avail to wrest from their obvious effect and meaning the language of the later act. While the discharge of fiduciary debts is certainly a very wide departure from the policy of the original bankrupt law, it may have been supposed by the framers of the act of 1874 that the large majority in value of creditors required at one stage of the proceedings, three-quarters, and the necessity of satisfying the court that the composition is "for the best interest of all concerned," were substantial barriers against the abuse of the statute. It is certain that the interests of fiduciary creditors are among "the interests of all concerned" which the court is bound to guard, and if it appears that their interests, which of course includes their right to retain their claims for the unpaid balance of their debts, if the estate is regularly wound up in bankruptcy, will be unduly sacrificed to the interests of other classes of creditors, or of the debtor, by the confirmation of the composition, it might be a valid ground for withholding the approval of the court.

For these reasons, and on the grounds so fully stated by Judge Nixon in the case of In re Schafer, ut supra, but with hesitation, in view of the very high authority to the contrary, I am of opinion that fiduciary debts are discharged by composition proceedings. Motion denied.

[NOTE. Subsequently an injunction was issued to restrain a creditor from further proceedings who had instituted proceedings in the state court for the purpose of setting aside the agreement entered into in a composition between the bankrupts and a majority of their creditors. Case No. 11,992].